[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff wife by complaint dated May 12, 1999 and made returnable to this court on June 8, 1999, seeking a dissolution of marriage on the grounds of irretrievable breakdown. Additionally, the plaintiff seeks a fair division of the property and debts, alimony, child support and joint legal custody of the minor child with the primary residence with the plaintiff.
The defendant appeared through counsel and filed an answer and cross-complaint seeking a dissolution of marriage, joint custody of the minor child, an equitable division of the marital assets and such other legal and equitable relief to which the defendant may be entitled.
On October 31, 2002, November 1, 2002, and December 6, 2002 this matter was tried to the court having been previously claimed to the limited contested list. The parties were represented throughout the proceedings by counsel. Testimony was received from the plaintiff, and defendant, as well as other witnesses that were called by each party. From the testimony and evidence produced at the trial and after assessing the credibility of the witnesses, the court finds the following facts to have been proven.
The parties were intermarried on October 13, 1979 at Hartford, Connecticut. The plaintiff and defendant have one minor child, issue of the marriage and no other minor children have been born to the plaintiff wife since the date of the marriage. Neither party is receiving any state, federal or local assistance. The parties have resided in this state for more than one year immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage.
Based upon a review of the exhibits as well as the testimony at trial, the court finds the following additional facts. CT Page 15538
The plaintiff wife is 47 years old. Approximately ten years ago, she had breast cancer, underwent a mastectomy and subsequently had constructive surgery. She has an Associates Degree from the University of Bridgeport, a B.A. degree from the University of Connecticut and is currently working towards a Masters Degree in education at Eastern Connecticut State University.
The plaintiff is the undisputed primary caretaker of the parties minor child, Caitlin who resides in the family home at 15 Adam Lane, Tolland, Connecticut.
From her marriage to the present, the plaintiffs occupation has been that of a dental hygienist. She is currently working part time for a dentist in Tolland, Connecticut earning $220.00 a week. Her long term goals include obtaining employment as a teacher of young children, preferably in an inner city. While the court is aware that in the future the plaintiffs employment situation may change after she receives a Master's Degree, the court finds that the plaintiffs is sufficiently employed considering that she has assumed the primary responsibility of caring for the parties special needs child.
Caitlin was born on October 12, 1987 and is presently fifteen years old. At the age of three years old, Caitlin was diagnosed as autistic. Her present medical condition includes having Soto's Syndrome, a kidney disorder and scoliosis. She may require surgery in the future for her scoliosis. Caitlin has extremely limited communication skills and numerous cognitive and emotional difficulties. Caitlin's IQ is reported to be 70 and although she is fifteen years old, her mental development is that of a much younger person. Her medical and behavioral problems require intense personal care. The child, previously, having had behavioral problems in the Tolland school system, is now attending the Gengras Center school, a private school in West Hartford. Both the schooling and transportation are provided by the Town of Tolland. The plaintiff has occasional assistance from her family in caring for Caitlin. The defendant husband, in the exercise of his visitation also provides care for her. The cost of obtaining a nurse to assist with Caitlin would be approximately $35.00 an hour as the nurse would have to be skilled in the psychiatric aspects of nursing and be qualified to administer medications. It is not the preference of the plaintiff to have Caitlin live in a group home as she fears for her vulnerability in such a setting. In addition, the plaintiff testified that she works limited hours in order to be available to assist her daughter if problems develop during the day at school. The care of the parties child is the main priority in the plaintiffs life and her devotion and efforts are recognized and appreciated by the defendant. CT Page 15539
The court finds that the child is suffering from mental retardation as defined in Section 1-1g. is residing with a parent and is principally dependent on her parents for maintenance and as such, pursuant to Connecticut Statute Section 46b-84 (c) the court enters support orders as hereafter stated until the child attains the age of twenty-one years old with the child support guidelines not being applicable. The defendant is currently paying the plaintiff $837.00 per week voluntarily for the support of the child and plaintiff.
The defendant husband is 48 years old. Aside from high blood pressure, he has no other medical problems. Mr. Allen is a college and law school graduate. He passed the Connecticut Bar Exam in 1980. The defendant began his career by working in the Clerk's Office in a Connecticut courthouse and then obtained employment working for an attorney from 1982 until 1984. From January 1984 until the present, he worked at numerous insurance companies in a variety of positions, each affording him higher compensation. He previously was the President of the Connecticut Surety Corporation. Presently, he is the Vice President of the Capitol Indemnity Corporation earning approximately $200,000.00 a year plus potential bonuses and the use of an automobile.
Since June of 2001, the defendant has been living in a condominium at 12 Chelsea Road in Glastonbury, Connecticut. It was purchased by his mother for his use, for $214,500.00. Mr. Allen pays his mother rent of $1350.00 for the use of the condominium along with the payment of the condominium association fee of $195.00 per month. In addition, the defendant's mother purchased a boat for $77,000.00 for her son to use although she still owns the vessel.
The defendant is currently involved in a relationship with Bethany Duncan. Ms. Duncan lived in the defendant's condominium from January of 2002 until May of 2002. The defendant testified that he first meet Ms. Duncan in February of 1997 but did not have a relationship with her until after he separated from his wife in 1999. During the past several years, the defendant has taken numerous trips with Ms. Duncan for vacations out of the country. The defendant testified that he has no present plans to marry Ms. Duncan.
The court does not find his testimony in regard to his relationship with Ms. Duncan to be credible.
The defendant admitted to another sexual relationship during his marriage many years prior to the separation of the parties but said it was limited to a single sexual incident involving oral sex with a woman CT Page 15540 other than his wife. The court does not find his testimony to be credible.
The parties first met in 1978. After dating approximately a year, they married in 1979. Neither party entered the marriage with any significant assets. The defendant husband worked continuously during the marriage and provided his family with a consistent and high level of income. He has demonstrated that he has both the skills and ambition to be successful in his chosen profession. The plaintiff worked during the marriage as a dental assistant in addition to her role as the primary caretaker of the parties minor child.
Unfortunately, their daughter was first diagnosed with medical problems when she was three years old. The marriage first developed significant problems when the child was eleven years old. This placed a great deal of pressure on the parties. The plaintiff and defendant had different approaches to the care, medical and daily life decisions in regard to their daughter which contributed to the breakdown of the marriage. The court finds that both parties have the utmost care and concern for the well being of their daughter and the differences expressed are motivated by a good faith attempt to provide the best possible care for their daughter. The parties have filed an agreement and stipulation dated November 1, 2002 in regard to the custody of their child which the court approves and makes a part of the orders hereafter entered.
The plaintiff gave credible testimony as to numerous out of marriage sexual relationships the defendant had during the course of the marriage. The defendant did admit to improper behavior but not to the extent as claimed by the plaintiff. The defendant also admitted that his conduct contributed to the breakdown of the marriage.
The evidence supports and the court so finds that the greater share of the breakdown of the marriage lies with the defendant. The defendant was involved in multi-extramarital relationships during the course of the marriage which the court finds to have been a significant factor in the demise of the marriage.
The plaintiff has taken the primary responsibility in the day to day care of the parties child which requires an extraordinary amount of time and effort. She also maintained the household during the marriage in addition to working. The defendant has also contributed to the care of the child and has provided ample financial support for his family. The assets the parties now have were accumulated during this marriage.
The court finds that this has been a marriage of 23 years. The CT Page 15541 defendant has a successful career and currently earns approximately $200,000.00 a year with the potential for additional amounts of income. The plaintiff desires to change her profession in the future and her income potential is far less than the defendants. In addition, as the plaintiff is the primary caretaker of the minor child, her ability to generate an income is reduced.
After taking into consideration all of the criteria set forth in Connecticut General Statutes 46b-62, 46b-81, 46b-82, and 46b-84, and applying the same to the evidence, the court enters the following orders.
 1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
 2. The parties have filed an agreement and stipulation dated November 1, 2002 in regard to the custody of their minor child, Caitlin R. Allen which the court approves and makes a part of this order and may be incorporated by reference.
 3. The defendant shall make child support payments to the plaintiff for the child in the amount of $500.00 per week until the child attains the age of twenty-one years pursuant to Connecticut General Statute § 46b-84 (c). The plaintiff and defendant shall equally share in the unreimbursed medical and day care expenses until the minor child attains the age of twenty-one years.
 4. The defendant shall maintain at his sole expense the present medical/dental insurance for the child so long as he is obligated to pay child support for said child.
 The defendant shall pay one-half of the costs of COBRA medical insurance for the plaintiff for as long as he is legally able to provide the same. The plaintiff shall pay the other half of the costs of COBRA benefits. If the plaintiff is able to obtain such insurance through her employment at no cost to her, she shall obtain same, as long as that insurance covers her pre-existing conditions.
 5. The defendant shall be entitled to claim the minor child as an exemption on his state and federal tax CT Page 15542 returns.
 6. The defendant shall convey to the plaintiff by quitclaim deed any and all interest he may have in the property known as 15 Adam Lane, Tolland, Connecticut. The plaintiff shall hold the defendant harmless from the taxes and insurance on said property.
 7. The plaintiff shall have ownership of the 2002 Volvo automobile and the 1988 GMC automobile free and clear of any claims of the defendant.
 8. The defendant shall have ownership of the 1996 Ford automobile free and clear of any claims of the plaintiff.
 9. The plaintiff shall retain ownership of the following accounts free and clear of any interest of the defendant.
 a. Tolland Bank savings account as listed on her financial affidavit.
 b. Tolland Bank checking account as listed on her financial affidavit.
 c. Fidelity Investments IRA account #141-293938 as listed on her financial affidavit.
It is the intent of the court that the plaintiff have entire ownership of the entire accounts listed whether in joint ownership or sole ownership and the court recognizes that the balances in said accounts may change due to market fluctuations.
 10. The defendant shall retain ownership of the following accounts free and clear of any interest of the plaintiff.
 a. Savings Bank of Manchester savings account as listed on his financial affidavit.
 b. Savings Bank of Manchester checking account as listed on his financial affidavit. CT Page 15543
 c. Fidelity Investments IRA as listed on his financial affidavit.
 d. Fidelity Investments Rollover as listed on his financial affidavit.
 e. Capital Transamerica 401 K as listed on his financial affidavit.
 f. America Funds Rollover IRA's as listed on his financial affidavit.
 g. Vanguard Group account as listed on his financial affidavit.
 h. $25,000.00 surplus note from Conn. Surety plus any accrued interest.
It is the intent of the court that the defendant have the complete ownership of the entire accounts listed whether in joint ownership or in sole ownership and the court recognizes that the balances in said accounts may change due to market fluctuations.
 11. The Fidelity Investments Ultra Services Account X-41-060690 currently in joint names as listed on both financial affidavits in the approximate balance of $474,118.00, shall be divided as follows.
 a. 65% of said account is to be transferred to the plaintiff free and clear of any claims of the defendant.
 b. 35% of said account is to be transferred to the defendant free and clear of any claims of the plaintiff.
It is the intent of the court that said account be divided as herein entered and the court recognizes that the balances in said account may change due to market fluctuations.
 12. The defendant shall maintain his current life insurance policy through CNA in the amount of $500,000.00 as listed on his financial affidavit naming the plaintiff as irrevocable beneficiary CT Page 15544 thereon for as long as he has a child support or alimony obligation. The defendant shall provide proof to the plaintiff each year of his maintenance of said policy.
 13. The defendant shall maintain his current life insurance policy through Unicare in the amount of $100,000.00 as listed on his financial affidavit naming the plaintiff as irrevocable beneficiary thereon for as long as he has a child support obligation. The defendant shall provide proof to the plaintiff each year of his maintenance of said policy.
 14. The plaintiff shall retain ownership of her Mass. Mutual Life Insurance Policy in the amount of $50,000.00 free and clear of any claims of the defendant.
 15. The parties shall maintain the current life insurance policy through the Allen 1995 irrevocable trust in the amount of $750,000.00 naming the minor child irrevocable beneficiary until said minor child attains the age of twenty-one years of age. The parties shall equally share the annual premium for said life insurance trust until said minor attains the age of twenty-one years of age.
 16. Each party shall retain possession of and are entitled to all household goods, furnishings and possessions now under their possession and control.
 17. The plaintiff shall have ownership of all of the jewelry and silverware currently in her possession free and clear of any claims of the defendant.
 18. The court orders the defendant to pay to the plaintiff the sum of $600.00 a week as periodic alimony for a period of fifteen years from the date of dissolution. Said alimony shall terminate upon the death of the plaintiff, the death of the defendant or the expiration of fifteen years, whichever shall first occur. This alimony CT Page 15545 obligation is intended as a separate maintenance and said obligation shall not be affected by any discharge in bankruptcy.
 19. The parties shall execute any documents reasonably necessary to effectuate the transfer of any assets or to provide compliance with any of the orders of this court.
 20. The defendant shall pay $5,000.00 towards the plaintiffs attorney's fees within thirty days of the date of this Judgment.
 21. The plaintiff shall be responsible for the debts and liabilities shown on her financial affidavit and the plaintiff shall hold the defendant harmless thereon.
 22. The defendant shall be responsible for the debts and liabilities shown on his financial affidavit and the defendant shall hold the plaintiff harmless thereon.
 23. The court shall have continuing jurisdiction to enter an education support order under the provisions of PA 02-128.
24. A contingent wage execution shall issue.
 25. Plaintiffs counsel shall prepare and file within thirty days of this decision a judgment file and both counsel shall sign the judgment file.
 ___________________ J. Graziani Superior Court Judge
CT Page 15546